**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM E. MONROE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-1499 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| JEWEL FOOD STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons stated below, Defendant's motion to dismiss Plaintiff's amended complaint [21] is granted. Although the Court is skeptical that Plaintiff has any viable claims, in an abundance of caution, the Court will allow Plaintiff to file, by no later than April 29, 2019, a motion for leave to file a second amended complaint (with the proposed second amended complaint attached) if he believes that he can maintain a claim consistent with the analysis set out below. If Plaintiff does not file a motion for leave to file a second amended complaint by that deadline, the Court will dismiss this case with prejudice and enter a final judgment consistent with Federal Rule of Civil Procedure 58. If Plaintiff does seek leave to file a second amended complaint, the Court will issue an order after reviewing Plaintiff's proposed complaint.

## STATEMENT

### I. Background

Pro se Plaintiff William Monroe ("Plaintiff") has been employed by Defendant Jewel Food Stores, Inc. ("Defendant") since 2006. He currently works as a part-time Loss Prevention Officer at Defendant's store located at 1220 South Ashland Avenue in Chicago. Plaintiff filed his original complaint [10] on March 13, 2018. He subsequently filed an amended complaint [14], which is the operative pleading.

In Plaintiff's amended complaint, he focuses on two separate time periods during which Defendant's actions caused adverse consequences for Plaintiff at work. The first set of circumstances arose in 2015 and 2016. Plaintiff alleges that he was threatened by a co-worker in May and October 2015. He claims to have reported both incidents to Defendant. Plaintiff contends that in retaliation for reporting those incidents, Defendant reduced his work hours during January and February 2016, but acknowledges that Defendant restored his regular work hours by March 2016.

The second set of circumstances about which Plaintiff complains began in January 2017, when Plaintiff took an indefinite medical leave of absence. During his period of leave, Plaintiff was required to report his medical status to Defendant's third-party leave administrator on a regular basis. After several months on leave, Plaintiff was notified on June 21, 2017 of Defendant's procedures for returning employees to work, which advise that if employees are not free of all medical restrictions, they may request reasonable accommodations. On August 8, 2017, Plaintiff asked to return to work. At that time, he provided a doctor's letter specifying certain medical restrictions: due to his disability and dialysis treatments, he could only work Tuesdays, Thursdays, and Sundays after 7:30 p.m., could not work for more than seven hours at a time, and could lift, push, or pull no more than fifty pounds.

The next day, Plaintiff called the store security manager, Marcus Geralds, to verify his work schedule for the next week. Geralds allegedly informed Plaintiff that Defendant's loss prevention district manager, Bruce Abraham, said that Plaintiff could not return to work unless he was 100% restriction free. Plaintiff called Defendant's employee complaint hotline to inform Defendant "about the misuse and mishandling of the compan[y's] handbook policies of harassment and retaliation by any associates employee." [14] at 13.

A few days later, on August 11, Plaintiff spoke with Defendant's medical accommodation coordinator and a human resources employee about getting a return to work certification from Plaintiff's doctor. These employees asked to speak with Plaintiff's physician. Plaintiff alleges that he agreed and the next day went to his store to pick up a release form to allow Defendant to speak with his physician. However, Plaintiff alleges, upon reading the form he learned that it was not a release allowing Defendant to speak to his physician, but a release covering all of his medical records. Plaintiff refused to sign the release based on his understanding that he had a right to keep his medical records private except to the extent that they pertained to his job responsibilities. According to Plaintiff, he told Defendant on August 23, 2017 that if Defendant wanted more information about his ability to perform his job, Defendant should make a request in writing, which Plaintiff would forward to his physician.

On several more occasions over the next month and a half, Defendant sent Plaintiff additional letters requesting that he sign the release, and each time Plaintiff refused. According to the amended complaint, Plaintiff told Defendant on August 31, 2017 that "if you would like to speak with my physician about my ability to do essential job functions, give me a letter stating only what you want to discuss the condition of plaintiff's ability to perform job duties and that will be granted." [14] at 16.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on September 29, 2017, in which he claimed that Defendant had engaged in disability discrimination and retaliation. On October 2, 2017, Plaintiff returned to work with Defendant accommodating his requested work schedule.

## II.     Legal Standard

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule

2

8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

### III. Analysis

#### A. Federal Claims—Failure to Accommodate/Retaliation

As a preliminary matter, notwithstanding the fact that in his original complaint Plaintiff checked the box indicating his intent to bring a complaint under the Americans with Disabilities Act ("ADA") or the Rehabilitation Act, Plaintiff has expressly disavowed any desire to proceed on a failure to accommodate claim under the ADA. [See 30, at 5.] Instead, Plaintiff bases his claim on a document issued by the EEOC entitled "Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act," 2002 WL 31994335 (No. 915.002, Oct. 17, 2002), which he claims Defendant violated by requesting his "entire complete medical records." [30, at 14.]

Plaintiff does not cite any authority for the proposition that the failure to adhere to the EEOC's enforcement guidance documents alone gives rise to a colorable, standalone ADA claim, and the case law cited by Defendant indicates the contrary. See *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (noting that EEOC guidelines on sexual harassment were not binding on the courts); *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 299 (7th Cir. 2000) (noting that EEOC guidance on Title VII is not binding on the courts). Defendant's alleged repeated insistence that Plaintiff sign a broad release of all medical records—rather than the more narrow release allegedly contemplated by the EEOC's enforcement guidance, which Plaintiff alleges he offered to sign—could conceivably support a claim for failure to accommodate based on unreasonable delay or a failure to engage in the interactive accommodation process in good faith. See, e.g., *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) ("unreasonable delay in providing

3

an accommodation can provide evidence of discrimination"); *Krocka v. Riegler*, 958 F. Supp. 1333, 1342 (N.D. Ill. 1997) (same). But neither Plaintiff's amended complaint nor his response to Defendant's motion to dismiss assert a failure to accommodate claim. If Plaintiff chooses to file a second amended complaint, he may want to consider bringing a failure to accommodate claim. The Court notes that it is skeptical that a mere month and a half delay in providing Plaintiff with the work schedule he requested is enough to constitute unreasonable delay or show a lack of good faith in engaging in the interactive process. See, e.g., *Jay*, 233 F.3d at 1017 (employer's 20-month delay in reassigning employee to vacant position after he was no longer physically able to work as millwright was reasonable under ADA, where employer considered employee for reassignment on weekly basis and kept him on medical layoff until he was reinstated); *Morris v. Ford Motor Company*, 2016 WL 4991772, at *7 (W.D. Wis. Sept. 16, 2016) ("[E]ven lengthier delays of a year or more not caused by a defendant's lack of good faith cannot in and of itself constitute a violation of the ADA. Instead, plaintiff must put forth evidence permitting a reasonable inference that the employer did not act in good faith in engaging in an interactive process."). However, the parties have not briefed this issue and therefore the Court is hesitant to foreclose such a claim without giving Plaintiff one last opportunity to raise it.

In addition to his claim for violation of the EEOC's enforcement guidance documents, Plaintiff attempts to state a claim for retaliation. "To prove a retaliation claim, a plaintiff must prove (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection between the two." *Koty v. DuPage County*, 900 F.3d 515, 519 (7th Cir. 2018) (internal citation and quotation marks omitted). Plaintiff does not state a retaliation claim based on his reporting of a co-worker's alleged threats in 2015 and 2016 because such a claim would be time-barred and is unrelated to the claim asserted in Plaintiff's EEOC charge, filed in September 2017. See *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (a charge filed beyond the 300-day period is untimely and time-barred); *Majors v. GE*, 714 F.3d 527, 536 (7th Cir. 2013) (refusing to consider alleged retaliatory conduct occurring 311 days before plaintiff filed her charge).

Plaintiff also fails to state a retaliation claim based on Defendant's alleged delay in returning him to work for refusing to sign the medical release form. The Court is not convinced by Defendant's argument that this claim is foreclosed by Plaintiff's refusal to sign Defendant's release, which according to Defendant caused a breakdown in the interactive process and any delay in returning Plaintiff to work. Defendant's argument does not acknowledge the amended complaint's allegations that Plaintiff made several offers to provide a more limited release allowing Defendant to talk to his physician about his ability to perform his job. The Court therefore cannot say as a matter of law that any delay was attributable solely to Plaintiff's actions, as was the case in *Alanis v. Metra*, 2017 WL 569015, at *5 (N.D. Ill. Feb. 13, 2017). Nonetheless, Plaintiff never clearly identifies what "statutorily protected activity" he engaged in or explains the "causal connection" between that activity and Defendant's allegedly retaliatory conduct. If Plaintiff chooses to file a second amended complaint that contains a retaliation claim, he should clarify: (1) the "statutorily protected activity" he engaged in (was it complaining about Abraham's alleged statement that Plaintiff could not return to work unless he was 100% restriction free, and/or something else?); (2) the adverse action he suffered (such as a loss of pay by not being allowed to return to work); and (3) the causal connection between the two.

### B. State law claims—Negligence/Intentional Infliction of Emotional Distress ("IIED")

Finally, Plaintiff failed to respond to Defendant's argument, supported by the case law, that his state law "employment negligence" and IIED claims are preempted by the Illinois Human Rights Act and thus has waived any argument to the contrary. See *DeFronzo v. Conopco, Inc.*, 357 F. Supp. 2d 1062, 1065 (N.D. Ill. 2005) (dismissing negligence claim where it was predicated on the prohibition against sexual harassment); *Krocka v. City of Chicago*, 203 F.3d 507, 517 (7th Cir. 2000) (affirming the dismissal of plaintiff's IIED claim because the alleged offensive comments about plaintiff's disability that provided the basis for plaintiff's claim were inextricably linked to plaintiff's disability discrimination claim); see also *Daulo v. Commonwealth Edison*, 938 F. Supp. 1388, 1404 (N.D. Ill. 1996) ("the courts of the Northern District of Illinois are routinely dismissing Illinois state tort claims—particularly IIED claims—for lack of jurisdiction when brought in conjunction with allegations of a civil rights violation, concluding that such claims are 'inextricably linked' to the underlying discrimination claim and thus preempted by the IHRA"). These claims do not appear to be plausible in any event. Plaintiff fails to identify any duty or breach that would give rise to a negligence claim, and the events described in the complaint come nowhere close to the kind of extreme or outrageous conduct that might support an IIED claim.

### IV. Conclusion

For the reasons explained above, Defendant's motion to dismiss Plaintiff's amended complaint [21] is granted. Plaintiff is given until April 29, 2019 to file a motion for leave to file a second amended complaint (with the proposed amended complaint attached) if he believes that he can maintain a claim consistent with the analysis set out above. If Plaintiff does not file a motion for leave to file a second amended complaint by that deadline, the Court will dismiss this case with prejudice and enter a final judgment consistent with Federal Rule of Civil Procedure 58. If Plaintiff does seek leave to file an amended complaint, the Court will issue an order after reviewing Plaintiff's proposed complaint.

Dated: March 30, 2019

Robert M. Dow, Jr.
United States District Judge