IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. MONROE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-1499 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| JEWEL FOOD STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant's motion to dismiss the second amended complaint [92] is granted. However, in an abundance of caution, the Court will allow Plaintiff a final opportunity to submit a proposed third amended complaint. Plaintiff may file, by no later than March 12, 2021, a motion for leave to file a third amended complaint (with the proposed third amended complaint attached) if he believes that he can maintain a claim consistent with the analysis set out below. If Plaintiff does not file a motion for leave to file a third amended complaint by that deadline, the Court will dismiss this case with prejudice and enter a final judgment consistent with Federal Rule of Civil Procedure 58. If Plaintiff does seek leave to file a third amended complaint, the Court will issue an order after reviewing Plaintiff's proposed complaint.

**I.     Background[1]**

*Pro se* Plaintiff William Monroe ("Plaintiff") has been employed by Defendant Jewel Food Stores, Inc. ("Defendant") since 2006. He currently works as a part-time Loss Prevention Officer

---

[1] For purposes of ruling on Defendant's motions to dismiss, the Court accepted as true all of Plaintiff's well-pleaded factual allegations and drew all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

at Defendant's store located at 1220 South Ashland Avenue in Chicago. In early 2017, Plaintiff was hospitalized because of kidney failure due to end-stage renal disease. The condition required Plaintiff to undergo dialysis twice per week, and later three times per week. Plaintiff was released from the hospital in February 2017 and submitted medical documentation to Jewel "so as to start his administrative leave of absence and be put on FMLA short term disability." [46 at 3.] Plaintiff took his leave of absence, and on June 21, Jewel Accommodation Coordinator Sharon Rosy sent Plaintiff a letter describing Defendant's procedures for returning employees to work, which stated that employees who are not free of all medical restrictions may request reasonable accommodations. [*Id.* at 14.]

On August 8, 2017, Plaintiff asked to return to work and provided a doctor's letter stating that he would be able to work Tuesdays, Thursdays, and Sundays beginning at 7:30 p.m. for up to 7 hours each day. [*Id.* at 15.] On August 9, someone at Jewel told Plaintiff that he was not allowed to return to work unless he was "100% restriction free," meaning free of all medical restrictions. [*Id*. at 4.] That same day, Plaintiff called the Jewel employee complaint hotline, reported the "100% free" comment, and said that he was going to file a charge with Equal Employment Opportunity Commission ("EEOC") for discrimination and retaliation over the comment.[2]

On August 11, 2017, Plaintiff received a call from Rosy. She asked why Plaintiff was not available to work on Saturdays rather than Sundays, which were overtime days, and he explained that Saturdays were used for making up missed dialysis appointments or for extra or emergency appointments. Rosy also asked Plaintiff to fill out a release form that would authorize her to speak with Plaintiff's physician. When Plaintiff later picked up the release form—he does not specify

---

[2] Apparently, he did; see [46 at 16-18], an EEOC complaint filed August 9, 2017, alleging—among many other things—that the "100%" comment was retaliation for conflicts between Plaintiff and his manager in April and October of 2016.

from where, but the Court assumes from a Jewel store or office—he saw that it would authorize Jewel to request a wide range of medical information, including clinical, laboratory, and scientific test results, and did not say anything about Rosy speaking with Plaintiff's physician. [*Id*. at 19].

On August 14, Plaintiff told Rosy that the release was overly broad and offered to sign a form specific to information regarding the essential functions and limitations of his job, but Defendant never sent him a narrower release. On August 17, Rosy mailed Plaintiff a letter requesting that he sign the release they had previously discussed and enclosing another copy of the form. [*Id*. at 20.] The next day, Rosy also mailed a letter to Plaintiff's physician which enclosed a request for additional information about the restrictions on Plaintiff's work schedule.[3] [*Id*. at 21.] That letter also noted that Jewel had provided Plaintiff with a copy of the release form so that he could address it with the physician at an August 19 appointment.

In a letter dated August 23, Plaintiff's physician responded to Jewel, stating that he could not release any records without a signed authorization. [*Id.* at 22.] A week later, Rosy sent Plaintiff another letter repeating the request that Plaintiff sign the release, "so that we may communicate with your physician for the purpose of evaluating your ability to return to work and whether reasonable accommodation that will allow you to perform the essential functions of your position is available." [*Id.* at 23.] Jewel also extended Plaintiff's unpaid medical leave of absence while it was waiting to hear from Plaintiff's physician. *Id*. During this time, Plaintiff made "daily" phone calls requesting to return to work but received no response. *Id.* at 6.

On September 6, Plaintiff sent Rosy a letter again declining to sign the release form and stating that if Jewel had any questions for his physician, they could send the questions to him and he would forward them to his physician for further response. [*Id.* at 26.] On September 19, Rosy

---

[3] Although the August 18 letter is attached to the complaint, see [46 at 20], no enclosures are.

3

called Plaintiff and said that he would be allowed to return to work, but Plaintiff did not receive a work assignment. On September 28, he left a voicemail with the Jewel human resources department stating that he would file an EEOC charge of discrimination and retaliation (which he did), and he called the Jewel employee hotline to complain about Jewel's insistence that he sign the release form. That same day, Plaintiff received a voicemail from someone at Jewel stating that he could return to work with Sundays optional. Plaintiff returned to work on October 2, 2017.

Plaintiff filed his original complaint [10] on March 13, 2018. He subsequently filed an amended complaint [14], which the Court dismissed for failure to state a claim in an order dated March 30, 2019 [45]. The Court gave Plaintiff leave to file a second amended complaint, which he did on April 29, 2019 [46]. The second amended complaint asserts failure to accommodate and retaliation claims under the Americans with Disabilities Act ("ADA"). The parties then engaged in a settlement conference with a Magistrate Judge but were unable to reach an agreement. Defendant moved to dismiss [92] on the grounds that the second amended complaint fails to state a claim for either failure to accommodate or retaliation.

## II. Legal Standard

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616). Because Plaintiff is proceeding *pro se*, the Court notes that *pro se* filings must be construed liberally, but even *pro se* litigants must follow the rules of civil procedure. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (citation omitted).

**III.    Analysis**

    **A.    Failure to Accommodate Claim**

Count I claims that Defendant failed to accommodate Plaintiff's disability under the ADA. More specifically, Plaintiff alleges that the delay between his request to return to work and the date on which he actually was permitted to return to work constitutes a failure to accommodate. To establish a viable claim for failure to accommodate, a plaintiff must show that: (1) he is a

qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005) (citation omitted). As to the third element—the only one at issue here—when an employer receives an accommodation request, it is not required to immediately provide the exact accommodation requested. *Sears,* 417 F.3d at 802. Rather, "the ADA obligates the employer to engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances." *Id.* at 805 (internal quotation marks omitted). This process brings the employee and employer together in cooperation to "identify the employee's precise limitations and discuss accommodation which might enable the employee to continue working." *Gile v. United Airlines, Inc.,* 213 F.3d 365, 373 (7th Cir. 2000). "If this process fails to lead to reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown." *Sears,* 417 F.3d at 805.

Defendant argues that the complaint should be dismissed because Plaintiff was responsible for the breakdown in the interactive process, and because it provided the accommodation Plaintiff requested, which exceeds the ADA's requirements. [93] at 6. Before addressing those issues, the Court must determine if Plaintiff has pled an unreasonable delay sufficient to state a failure to accommodate claim in the first place.

An unreasonable delay in providing an accommodation for an employee's known disability may amount to a failure to accommodate his disability violating the ADA. *Jay v. Intermet Wagner*, 233 F.3d 1014, 1017 (7th Cir. 2000) ("unreasonable delay in providing an accommodation can provide evidence of discrimination"). Whether a particular delay qualifies as unreasonable depends on the totality of the circumstances, *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020) (including a non-exhaustive list of factors to asses reasonableness of a delay). The length of the

6

delay, on its own, does not make a delay unreasonable; the plaintiff must allege facts permitting a reasonable inference that the employer did not act in good faith in engaging in an interactive process. See *Morris v. Ford Motor Co.*, 2016 WL 4991772, at *7 (W.D. Wis. Sept. 16, 2016).

Courts have found even long delays to be reasonable when employers clearly participate in the interactive process in good faith by, for example, seeking information about the employee's limitations, requesting clarifications from physicians about their responses, and looking for open positions for the employee or keeping the employee on a leave of absence during the interactive process. See, *e.g.*, *Jay*, 233 F.3d at 1017 (employer's 20-month delay in reassigning employee to vacant position after he was no longer physically able to work as millwright was reasonable under ADA, where employer considered employee for reassignment on weekly basis and kept him on medical layoff until he was reinstated); *Morris v. Ford Motor Co.*, 2016 WL 4991772, at *6 (W.D. Wis. Sept. 16, 2016) (seventy-five day delay in returning plaintiff to work was reasonable when, during that time, employer sought more specific information about and worked to resolve conflicting information about plaintiff's restrictions); *Clayborne v. Potter*, 448 F. Supp. 2d 185, 192 (D.D.C. 2006) (finding 12-month delay reasonable in light of defendant's efforts, including seeking additional medical information, considering alternative positions, and meeting with disability advocates); *Frick v. Local 23 of Int'l, Longshore & Warehouse Union*, No. C12-2224 TSZ, 2014 WL 1047950, at *6 (W.D. Wash. Mar. 14, 2014) (finding several month delay in determining accommodation reasonable in light of ongoing medical evaluation to determine plaintiffs' limitations and accommodations, absent evidence that defendant "acted unreasonably or failed to act in good faith throughout the interactive process.").

The parties do not cite, and the Court did not find in its own research, any case in which a delay of comparable length to the one in this case was determined to be unreasonable. *Cf. Cloe v.*

7

*City of Indianapolis*, 712 F.3d 1171, 1179 (7th Cir. 2013) ("We do not think a reasonable jury could find that the delay here [of between two weeks and one month] in tracking down a new piece of equipment was unreasonable."), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–65 (7th Cir. 2016); *Keen v. Teva Sales & Mktg., Inc.*, 303 F. Supp. 3d 690, 730 (N.D. Ill. 2018) (two-week delay in returning plaintiff to work was not an actionable failure to accommodate).

In contrast, longer delays have been found unreasonable when coupled with bad faith actions by the employer. For example, in *Johnson v. Brennan*, a five-month delay was unreasonable when the employer "completely ignored multiple requests for an accommodation," took no steps to address plaintiff's request while on leave for a condition the employer knew was related to "stress on the job," and identified no circumstances that prevented it from timely addressing the request. 2020 WL 1139253, at *7 (N.D. Ill. Mar. 9, 2020).

Plaintiff argues that the delay was roughly eight weeks, presumably counting from his August 9 request to return to work until the date he actually returned, October 2. Nothing about that timeframe necessarily suggests an unreasonable delay. See *Cloe*, 712 F.3d at 1179 (one- to two-month delay not unreasonable); *Morris*, 2016 WL 4991772, at *6 (seventy-five-day delay not unreasonable); *Jay*, 233 F.3d at 1017 (twenty month delay not unreasonable). More importantly, the second amended complaint does not allege bad faith. Plaintiff objects to Defendant's request for information about the days he was available to work, but Defendant was entitled, perhaps even required, to seek information and clarifications so that it could "identify the precise limitations" resulting from Plaintiff's disability. *Coleman v. Caterpillar, Inc.*, 2017 WL 3840423, at *5 (N.D. Ill. Sept. 17, 2017) (citing 29 C.F.R. § 1630.2(o)(3)). As written, the second amended complaint describes Defendant seeking information in ways that Plaintiff did not like and objected to but

8

were part of the interactive process. It does not allege that, or explain how, these actions were undertaken in bad faith.

One potential point in Plaintiff's favor is the gap between Rosy telling Plaintiff that he was cleared for work and Plaintiff's actual return to work. That gap was about two weeks, from September 19 to October 2, and it ended shortly after Plaintiff called Jewel's Human Resources Department. But the complaint offers no explanation for the gap between Rosy's statement that Plaintiff could return to work and his actual return. The gap might be viewed as suspicious. Perhaps it was even nefarious. But the Court cannot simply assume that Defendant was acting in bad faith, for there are many innocent explanations as well. Moreover, casting aspersions on Defendant without asking for a firmer factual basis than has been provided by Plaintiff to date would go far beyond drawing a reasonable inference in Plaintiff's favor. In short, while the second amended complaint leaves open the *possibility* of wrongful conduct, it does not meet the requirements of pleading at least some fact (or facts) from which the trier of fact could infer a *plausible* instance of wrongful conduct, and thus does not provide enough to state a claim. *McCauley*, 671 F.3d at 616.[4]

### B. Retaliation Claim

Count II alleges retaliation under the ADA. In particular, Plaintiff claims that Defendant retaliated against him for his August 9, 2017 EEOC charge by delaying his return to work. "Employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless." *Koty v. DuPage Cty., Illinois*, 900 F.3d 515, 519 (7th Cir. 2018) (citing *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522,* 657 F.3d

---

[4] Because the Court resolves the motion on these grounds, it leaves for another day the other questions Defendant raised, such as responsibility for any breakdown in the interactive process and whether the Court can make that determination at the motion to dismiss stage.

595, 601 (7th Cir. 2011)). To state a claim for retaliation under the ADA, a plaintiff must allege: (1) that he engaged in a statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the employer's action. *Prince v. Illinois Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010) (citing *McClendon v. Ind. Sugars, Inc.,* 108 F.3d 789, 796 (7th Cir. 1997)). Establishing this causal link requires allegations "that the employer would not have taken the adverse action 'but for' the protected expression." *Johnson v. City of Fort Wayne, Ind.* 91 F.3d 922, 939 (7th Cir. 1996).

The second amended complaint does assert that Plaintiff engaged in a statutorily protected activity: filing an EEOC charge. *Koty*, 900 F.3d at 520 ("there is no dispute that submitting an EEOC charge is a statutorily protected activity"). However, even assuming that the delay in returning Plaintiff to work constitutes an adverse employment action—an issue with which neither party engages substantively—Plaintiff has not connected the delay to his protected activity. The complaint pleads no facts suggesting a causal relationship between his August 9, 2017 EEOC charge and the timing of his return to work. It includes only a conclusory allegation that "Jewel did not allow Plaintiff to return to work for 8 weeks because he complained about the 100% statement," [46 at 9], and mere 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Because the second amended complaint, at the very least, does not allege a causal connection between the August 9, 2017 EEOC charge and the gap between Plaintiff's request to return to work and the date he actually returned, it fails to state a claim for retaliation under the ADA, and Count II is dismissed.

\* \* \* \* \*

If Plaintiff had counsel, the Court likely would not permit yet another round of pleadings. But the Court is mindful of its "special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019) (quoting *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996)). Accordingly, the Court will allow Plaintiff, if he wishes, to file one more proposed amended complaint. If Plaintiff chooses to file a proposed third amended complaint that contains a failure to accommodate claim based on evidence of unreasonable conduct by Defendant, Plaintiff should identify what evidence demonstrates or permits a reasonable inference that Defendant did not act in good faith in engaging in an interactive process. If Plaintiff chooses to file a proposed third amended complaint that contains a retaliation claim, he should clearly identify the causal connection between the adverse action and his filing an EEOC charge on August 9, 2017. Plaintiff must attach the proposed amended complaint to his motion so that the Court can evaluate it against the Rule 8 pleading standards and the case law discussed in the opinions dismissing Plaintiff's prior attempts to state a claim in this case.

### IV.   Conclusion

For the reasons set forth above, Defendant's motion to dismiss the second amended complaint [92] is granted. However, out of an abundance of caution, the Court will allow Plaintiff a final opportunity to amend the complaint. Plaintiff may file, by no later than March 12, 2021, a motion for leave to file a third amended complaint (with the proposed third amended complaint attached) if he believes that he can maintain a claim consistent with the analysis set out below. If Plaintiff does not file a motion for leave to file a third amended complaint by that deadline, the Court will dismiss this case with prejudice and enter a final judgment consistent with Federal Rule

of Civil Procedure 58. If Plaintiff does seek leave to file a third amended complaint, the Court will issue an order after reviewing Plaintiff's proposed complaint.

Dated: February 12, 2021

                                                                  Robert M. Dow, Jr.
                                                                   United States District Judge

12