IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. MONROE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-1499 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| JEWEL FOOD STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant Jewel Food Stores, Inc.'s motion to dismiss the third amended complaint [109] is granted. In addition, Plaintiff William Monroe's motion to file a fourth amended complaint [118] is denied. Final judgment will be entered in favor of Jewel and against Monroe on a separate document in compliance with Federal Rule of Civil Procedure 58. Civil case terminated.

**I.      Background**

**A.      Factual Background[1]**

*Pro se* Plaintiff William E. Monroe has worked as a part-time loss prevention officer for Defendant Jewel Foods since 2006. [106 at ¶ 8.] In January 2017, Monroe was hospitalized and diagnosed with kidney failure and renal disease and was required to undergo dialysis treatment three times per week. [*Id.* at ¶¶ 8, 10.] Monroe was unable to work while being treated for kidney failure, but his medical reports "were sent and reported bi-monthly to Defendant['s] 3rd party insurer to validate his condition and disability" and approve his status as a paid employee on leave

---

[1] For purposes of Jewel's motion to dismiss, the Court accepts as true all well-pled allegations set forth in the third amended complaint [106] and draws all reasonable inference in Monroe's favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

pursuant to the Family and Medical Leave Act (FMLA). [*Id*. at 10.]

On June 17, 2017, Jewel mailed a letter to Monroe about Jewel's leave-of-absence and return-to-work policies. [46 at 14.[2]] The letter informed Monroe that at whatever point he became medically cleared to resume his job with Jewel, he was not "required to be free of all restrictions in order to return to work," and could "request a reasonable accommodation" to enable him to return to work or "perform the essential functions" of his job. [*Id.*] The letter further stated: "It is your responsibility to inform the Company when you are released to return to work – with or without restrictions – and provide the requested documentation. This will enable the Company to return you to work as quickly as possible." [*Id.*]

On August 8, 2017, after 6 months of FMLA leave, Monroe asked to return to work and provided Jewel with a letter from his physician stating that he could only work 7-hour shifts on Tuesdays, Thursdays, and Sundays from 6:30 p.m. until 1:30 a.m. because he was required to have dialysis treatments on Mondays, Wednesdays, and Fridays. [*Id.* at ¶ 11; see also 46 at 15.] According to Monroe, on August 9, 2017, a Jewel employee told him that he had to be "100% restriction free" in order to return to work. [106 at ¶ 12.] Monroe contacted Jewel's complaint hotline to inquire about "the 100% return to work policy" and to inform Jewel that he planned to file a complaint with the Equal Employment Opportunity Commission (EEOC). [*Id.* at ¶ 13.]

On August 11, 2017, Sharon Rosy, an Accommodation Coordinator working for Jewel, contacted Monroe to discuss his scheduling limitations. [*Id.* at ¶ 14.] Rosy asked Monroe to explain why he could not work on Saturdays. Monroe informed Rosy that Saturdays were reserved as make-up treatment days in case he missed any of his regularly scheduled dialysis appointments. [*Id.*] Rosy also asked Monroe to sign a medical release form granting the company permission to

---

[2] In accordance with the Court's prior order [108], the Court treats the exhibits attached to Monroe's second amended complaint [46 at 11–34] as incorporated in the third amended complaint.

contact his physician directly about his accommodation request, and Monroe agreed. [*Id.* at ¶ 15; 46 at 20.] The next day, when Monroe picked up the release form from his "Jewel foods home store," he saw that the form would authorize Jewel to access a wide range of his medical information, such as laboratory and blood test results and organ measurements. [106 at ¶¶ 16, 17.] Finding the release form overbroad, Monroe called Rosy on August 14, 2017 and left her a voicemail saying that he would not sign the form. [*Id.* at ¶ 17.] He requested to have an "informal discussion" with Rosy about modifying the release form to limit its scope to information related to "his ability to perform the essential function of his position." [*Id.*] That same day, Monroe's physician sent another letter to Jewel certifying Monroe as ready to return to work, subject to the same scheduling limitations as stated in the physician's previous letter. [*Id.* at ¶ 18.]

On August 15, 2017, having not heard back from Rosy, Monroe tried calling Rosy three separate times, in the morning, afternoon, and just before 4:00 p.m. closing hours, but never reached her. [*Id.* at ¶ 19.] Monroe left a voicemail for Rosy each time he called but did not hear back from her. [*Id.*] The next day, on August 16, 2017, Monroe tried to call Rosy three more times, left voicemails each time requesting that Rosy speak with him about the medical release form, and never received a call back from Rosy. [*Id.* at ¶ 20.]

On August 17, 2017, Rosy mailed another copy of the release form to Monroe. [*Id.* at ¶ 23; 46 at 20.] Rosy also mailed a copy of the release directly to Monroe's physician the next day, explaining that Monroe had not signed the release, but that "he did tell me that he has an appointment on Saturday, August 19th at which time could provide you with the consent to provide the Company with the requested explanation." [106 at ¶ 21; 46 at 21.[3]] Monroe attempted to

---

[3] Monroe's third amended complaint states that Rosy mailed a letter to his physician on August 17, 2017 [106 at ¶ 21], and another to him on August 18, 2017 [106 at ¶ 23], but the supporting exhibits reflect that these events occurred in the reverse order: Rosy's letter to Monroe is dated August 17, 2017 [46 at 20], and her letter to his physician is dated August 18, 2017 [46 at 21].

contact Rosy by phone several times over the next few days but never reached her. [See 106 at ¶¶ 24–27.]

On August 23, 2017, Monroe's physician mailed a letter to Rosy informing her that he could not provide Jewel with Monroe's medical records without his consent. [*Id.* at ¶ 28; 46 at 22.] The letter also stated: "As to your question about patient's available work days, given the nature of end stage kidney disease, how long patient's energy levels remain decreased after a dialysis session is variable and patient specific." [46 at 22.] That same day, Rosy called Monroe to ask again that he sign the release. In response, Monroe restated his position that he would not sign the release because it was unnecessarily broad, but that he was "more than willing" to allow Jewel representatives to speak with his physician about a more specific set of information related to his ability to perform his job. [106 at ¶ 28.] Rosy told Monroe that he would remain on unpaid leave as long as he continued to refuse to sign the release, and Monroe accused her of violating the Americans with Disabilities Act of 1990 (ADA). [*Id.*] Rosy told Monroe that she was "well aware" of what the ADA requires, and repeated that he would remain on unpaid leave until he signed the release. [*Id.*] Monroe made another series of calls to Rosy over the next several days but was unable to connect with her again by phone. [*Id.* at ¶¶ 29–30, 33.] On August 30, 2017, Jewel mailed another letter to Plaintiff attaching an additional copy of the release and informing him that the company would "accommodate" him with "a continued unpaid medical leave of absence." [*Id.* at ¶ 31; 46 at 23–25.]

On September 6, 2017, Monroe mailed a letter to Jewel declining again to sign the release, and instructing Jewel that he would forward any further questions to his physician. [See 46 at 26.] Monroe concluded his letter by stating: "I am looking forward to returning back to work willing and healthy without further problems." [*Id.*] On September 19, 2017, Jewel called Monroe to tell

4

him that he would be allowed to return to work without signing the medical release. [106 at ¶ 34.] Jewel did not, however, provide Monroe with a work assignment at that time, and for eight days, from September 20, 2017 through September 28, 2017, Monroe tried repeatedly to contact Jewel to get an exact date for his return to work, but his calls went unreturned. [*Id.* at ¶ 35.] On September 28, 2017, Monroe called Jewel's human resources department stating that he would file an EEOC charge of disability discrimination against Jewel. [*Id.* at ¶ 36.] He filed a complaint with the EEOC the following day, on September 29, 2017. [*Id.* at ¶ 37; 46 at 29–30.] That same day, Jewel contacted Monroe and informed him that he could return to work on October 2, 2017. [106 at ¶ 38.]

      **B.**      **Procedural Background**

Monroe filed his original complaint [10] on March 13, 2018. He subsequently filed an amended complaint [14], which the Court dismissed for failure to state a claim [45]. The Court gave Monroe leave to file a second amended complaint, which he did [49]. The Court dismissed the second amended complaint for failure to state a claim [105], but in doing so, gave Monroe a final opportunity to move to file a third amended complaint, which he did [106]. The Court granted Monroe's motion with respect to three out of four counts, accepting the proposed third amended complaint with respect to the ADA discrimination claims (Counts I through III), but disregarding Monroe's ADA retaliation claim (Count IV). [108.]

Before the Court now is Jewel's motion to dismiss Monroe's third amended complaint for failure to state a claim [109]. While Jewel's motion to dismiss was pending, Monroe filed another motion for leave to amend his complaint [118], which Jewel opposes [121].

5

## II. Legal Standard

### A. Motion to Dismiss

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Monroe's well-pleaded factual allegations and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

### B. Motion for Leave to Amend Complaint

A motion for leave to file an amended complaint should "freely" be granted "where justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *Olech v. Vill. of Willowbrook*, 138 F.Supp.2d 1036, 1040 (N.D. Ill. 2000) (citation omitted). Leave to amend should be freely given "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated

6

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court "may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Mgmt., LLC,* 721 F.3d 865, 869 (7th Cir. 2013). The party seeking an amendment carries the burden of proof in showing that no prejudice will result to the non-moving party. *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994) (citation omitted). Ultimately, however, "'[t]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002)).

### III. Analysis

#### A. ADA Discrimination Claims

As an initial matter, the Court dismisses Counts II and III of the third amended complaint as duplicative of Count I. Claims are duplicative when they allege the same injury and rely on the same facts. See *Van Vliet v. Cole Taylor Bank*, 2011 WL 148059, at *2 (N.D. Ill. Jan. 18, 2011) (to determine whether two counts are duplicative of one another, "the Court looks to whether the parties, claims, facts and requested relief are substantially the same").

In Count I, Monroe asserts that Jewel discriminated against him in violation of the ADA by failing to reasonably accommodate his disability. Monroe's argument, in essence, is that by requiring him to sign an unnecessarily broad medical release form before granting his accommodation allowing him to return to work, Jewel discriminated against him on the basis of

7

his disability. These discriminatory actions, Monroe maintains, caused him to lose several weeks of income. Monroe states as much in his third amended complaint, alleging that Jewel discriminated against him in violation of the ADA "by demanding and forcing Monroe to sign a release form over of his private medical records" [106 at ¶ 42], which caused him to "suffer[ ] 5 and [a] half weeks of not being put back to work" [*id.* at ¶ 43], all because Jewel demanded that Monroe provide access to an unreasonably broad set of his medical data, such as his "private medical record labs and scientific reports and results" [*id.*]. Count II then asserts that Monroe tried to no avail to contact Jewel to negotiate alternative ways to allow it access to the medical information relevant to his job capabilities, which demonstrates that Jewel, acting in bad faith, caused a breakdown in the interactive process. [See *id.* at ¶¶ 46–68.] And Count III reasserts Jewel's bad-faith failure to engage in the interactive process and states the outcome that resulted from such behavior, which was that "Defendant delayed in bringing Monroe back to work." [106 at ¶ 69–71.]

Although the Court must liberally construe Monroe's *pro se* complaint, see *Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017), it has "'a great deal of latitude and discretion' to dismiss duplicative claims." *Reid v. Unilever U.S., Inc.*, 964 F.Supp.2d 894, 919 (N.D. Ill. 2013) (quoting *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir. 1993)). Rather than assert an independent or alternative claim, Counts II and III merely state additional facts in support of Monroe's claim for failure to accommodate. Each purported claim here is based on the same set of operative facts and asserts the same injury: that Jewel violated Monroe's right to be free from discrimination based on his disability. Furthermore, at this stage in the case (this is Monroe's third amended complaint), the Court has no reason to believe that further factual development would ultimately reveal these claims as independent from one another. *Cf. Popper v. Kaech*, 2021 WL

8

2986307, at *5 (N.D. Ill. July 15, 2021) (declining to dismiss potentially duplicative claims because the two claims did not "wholly overlap," leaving open the possibility for additional factual development to establish the claims as separate). Counts II and III of Monroe's third amended complaint are thus dismissed as duplicative of Count I.

Turning to the substance of Count I, Monroe's claim fares no better. Jewel argues that the third amended complaint has not plausibly alleged a claim for failure to accommodate for two reasons. First, failure to engage in the interactive process cannot by itself give rise to a failure-to-accommodate claim. Second, even if such a claim were valid, Monroe's claim fails nonetheless, because the facts alleged demonstrate that Monroe, not Jewel, caused the breakdown in the parties' interactive process. The Court need not address Jewel's second argument because Plaintiff's claim fails as a matter of law under the first argument.

To establish a viable claim for failure to accommodate, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005) (citation omitted). The third element—whether Jewel reasonably accommodated Monroe's disability—is the only one at issue here. "An employee begins the accommodation process by notifying [his] employer of [his] disability." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014). The employer then satisfies its duty under the ADA to reasonably accommodate an employee with a disability "when the employer does what is necessary to allow the employee to work in reasonable comfort," *Hoppe v. Lewis Univ.*, 692 F.3d 833, 840 (7th Cir. 2012), though a "reasonable accommodation" does not require the employer to provide the accommodation most preferred by the employee. *Id.* (citing *Rehling v. City of Chi.*, 207 F.3d 1009, 1049 (7th Cir. 2000)). "To determine the appropriate reasonable accommodation

9

it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). While an employer "can take no solace in its failure to engage in this process in good faith if what results is an unreasonable or inappropriate accommodation offer," an employee who fails to engage in the interactive process with his employer "cannot impose liability on the employer for its failure to provide a reasonable accommodation." *Hoppe*, 692 F.3d at 840.

Jewel argues that Monroe failed to engage in the interactive process, thus himself causing the delay in his return to work and preventing him from imposing liability on Jewel for the additional time he was required to spend on unpaid leave. Jewel further asserts that no claim exists against it for failure to accommodate, because it did, in fact, ultimately provide Monroe with the accommodation he requested.

As the Court explained at an earlier stage in this case—and as remains true at this later point in the action—Monroe has not alleged facts to support a finding that the length of Jewel's alleged delay *by itself* amounts to Defendant's failure to accommodate. [See 105 at 7 ("The parties do not cite, and the Court did not find in its own research, any case in which a delay of comparable length to the one in this case was determined to be unreasonable.").] In an attempt to remedy that defect, Monroe bolsters his third amended complaint with facts alleging that the failure to accommodate occurred when Jewel failed to participate in good faith in the interactive process between employer and employee to establish an appropriate accommodation for Monroe's disability.

In the Court's February 12, 2021 order dismissing Monroe's second amended complaint [105], the Court explained that in the context of claims for failure to accommodate based on an employer's unreasonable delay, some delays have been found unreasonable "when coupled with

10

bad faith actions by the employer." [105 at 8 (citing *Johnson v. Brennan*, 2020 WL 1139253 (N.D. Ill. Mar. 9, 2020).] In Monroe's case, without any allegations of bad faith, nothing about the "roughly eight weeks" between the date on which Plaintiff requested to return to work until the day he actually returned suggested an unreasonable delay. [*Id.* (citing cases in which accommodation delays as long as 20 months were deemed reasonable without a showing of bad faith by the employer).] Nevertheless, the Court granted Monroe leave to file a third amended complaint. In doing so, the Court accounted for and adhered to the rule that the Court has broad discretion to grant a motion for leave to file an amended complaint, see Fed. R. Civ. P. 15(a)(2), and the rule that the Court must liberally construe the pleadings of *pro se* litigants.

Tucked into the final paragraphs of the opening [110] and reply [117] briefs, Jewel cites *Rehling v. City of Chi.*, 207 F.3d 1009 (7th Cir. 2000), which proves critical to the proper disposition of this case. In *Rehling*, the plaintiff argued, in relevant part, that the City of Chicago violated the ADA by failing to engage in a good faith attempt to include the plaintiff in determining a reasonable accommodation for his disability. *Rehling*, 207 F.3d at 1015. The Seventh Circuit rejected that claim, explaining that although "the ADA does envision a flexible, interactive process by which the employer and employee determine the appropriate reasonable accommodation," the interactive process "'is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought.'" *Id.* (quoting *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1023 (7th Cir. 1997)). Thus, the Court concluded, "a plaintiff cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." *Id.* at 1016. To do so, "would not serve the underlying purposes of the ADA, and would * * * elevate the ADA's interactive process requirement to an end in itself." *Id.* Instead, "a plaintiff must allege

11

that the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual." *Id.*

It bears mentioning that other Seventh Circuit cases subsequent to *Rehling* have taken the same approach to the distinction between the means and the end of the interactive process, stressing that "there is no separate cause of action for a failure of that interactive process." *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 683 (7th Cir. 2014); see also *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1059 n.1 (7th Cir. 2014) ("Failure of the interactive process is not an independent basis for liability under the ADA"). In short, controlling precedent from our circuit teaches that "[i]n this area of the law, we are primarily concerned with the ends, not the means." *Bunn*, 753 F.3d at 683. Accordingly, if Jewel "did provide a reasonable accommodation" to Monroe, then Monroe's "apparent displeasure with the way in which [Jewel] decided on that accommodation, or with its failure to provide the exact accommodation he would have preferred, is irrelevant." *Id*. (citing *Rehling*, 207 F.3d at 1016).

As Jewel points out, and as Monroe acknowledges in his third amended complaint, although several weeks elapsed between when Monroe requested to return to work with certain accommodations and when he was granted permission to do so, he was permitted to return to work with his requested scheduling accommodation and without being compelled to sign the medical release that he had challenged as unnecessarily broad. Under the cases cited above, a claim that a defendant's engagement in the process was lacking, or even in bad faith, falls short of the mark where the accommodation ultimately was given. Jewel's motion to dismiss Count I of Monroe's third amended complaint is therefore granted.

B.     **Motion for Leave to Amend the Complaint**

Monroe has also moved to file a fourth amended complaint [118], which Jewel opposes [121]. The Court has dismissed Monroe's retaliation claim several times before, most recently in its order granting Monroe leave to file a third amended complaint [108]. The Court explained there that an ADA retaliation claim requires allegations that but for the plaintiff engaging in a protected activity—here, Monroe's filing of an EEOC charge against Jewel—the adverse employment action would not have occurred. See *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 939 (7th Cir. 1996). Because Monroe's third amended complaint did not allege any facts supporting such a causal link, the Court did not consider his ADA retaliation claim as part of the operative complaint. [See 108.]

In Monroe's latest effort to reassert an ADA retaliation claim, he proposes a fourth amended complaint alleging retaliation based on events that occurred between him and Jewel on September 21, 2021, more than three years after filing his original complaint in this action. In these additional allegations, Monroe claims that he was suspended from his job after expressing his concerns to members of Jewel management about transferring workplaces because he feared that reassignment would affect his ADA accommodations. According to Monroe, he was suspended in retaliation for "questioning his employment civil rights" and expressing concern that any adjustments to his disability accommodations might affect his "work performance," and somehow affect "his pending lawsuit against Jewel." [118 at ¶¶ 22–23.]

Monroe's claim as asserted in his proposed fourth amended complaint is not actionable at this time. "In Illinois, an employee may sue under the ADEA or ADA only if he files a charge of discrimination with the EEOC within 300 days of the alleged 'unlawful employment practice.'" *Flannery v. Recording Indus. Ass'n of America*, 354 F.3d 632 (7th Cir. 2004) (quoting *Hamilton*

13

*v. Komatsu Dresser Indus.*, 964 F.2d 600, 603 (7th Cir. 1992)). Monroe filed an EEOC charge in September 2017 relating to his accommodations under the ADA [see 4 at 29]. The question here, however, is whether the conduct that he alleges occurred in September 2021 falls within the scope of his 2017 EEOC complaint, because "a plaintiff may only bring claims that are originally included in the EEOC charge or are 'reasonably related to the allegations of the EEOC charge and growing out of such allegations.'" *Hopkins v. Bd. of Educ. of City of Chicago*, 73 F.Supp.3d 974, 982 (N.D. Ill. 2014) (quoting *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256–57 (7th Cir. 2011)). "Claims are reasonably related if there is a factual relationship between them." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001)). "That means that 'the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*.'" *Id.* (quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)).

Monroe's 2017 EEOC complaint states in relevant part: "During my employment, I requested a reasonable accommodation and was told I had to be at 100% and without restrictions in order to return. Subsequently, Respondent attempted to obtain confidential medical information from my physician without my permission and delayed my return to work. I complained to no avail." [46 at 29.] Now, four years later, Monroe asserts that he was suspended after raising concern about the potential that a different Jewel store would disregard his disability accommodation.[4] Nothing about the 2021 events as alleged in the proposed fourth amended

---

[4] Although the Court considers the EEOC charge, and not a subsequently filed federal complaint, for the purpose of deciding the scope of conduct encompassed in a plaintiff's attempt to exhaust his administrative remedies, it is worth noting here that Monroe appears to allege that an entirely different set of individuals were involved in the 2021 incident than are implicated in his 2017 dispute. Monroe's third amended complaint focuses largely on the conduct of Sharon Rosy, the accommodation coordinator. But his proposed amendment names a different set of Jewel employees responsible for his mistreatment, namely "LPDM Tom Carins" [118 at ¶ 25], who Monroe asserts was a key actor in the alleged retaliatory actions taken against him.

complaint suggests that the same individuals were involved in the 2017 and 2021 events, or that this seemingly isolated suspension is evidence of a "continuing violation" that might "reasonably relate" to Monroe's 2017 EEOC charge. See *Hopkins*, 73 F.Supp.3d at 982. Monroe's motion to file a fourth amended complaint [118] is thus denied without prejudice to the filing of a separate lawsuit if and when he exhausts any applicable administrative remedies. See *Aberman v. Bd. Of Educ. of City of Chi.*, 2014 WL 4912139, at *3 (N.D. Ill. Sept. 30, 2014) ("Before filing suit in federal court under the ADA * * * a plaintiff must file a timely charge with the EEOC.").

### IV. Conclusion

For the foregoing reasons, Jewel's motion to dismiss the third amended complaint [109] is granted. Monroe's motion to file a fourth amended complaint [118] is denied. Final judgment will be entered in favor of Jewel and against Monroe on a separate document in compliance with Federal Rule of Civil Procedure 58. Civil case terminated.

Dated: March 4, 2022

Robert M. Dow, Jr.
United States District Judge